UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID CHAPPLE,

                Plaintiff,                             Hon. Janet T. Neff

v.                                        Case No. 1:11-CV-979

DANIEL WICKERINK, et al.,

                Defendants.
_____/

### REPORT AND RECOMMENDATION

        This matter is before the Court on Defendant Wickerink's Motion for Summary Judgment. (Dkt. #7). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted** and this matter **terminated**.


### BACKGROUND

        The following allegations are contained in Plaintiff's complaint. (Dkt. #1). Plaintiff is a member of the Moorish Science Temple of America (MSTA). On February 4, 2010, Plaintiff was transferred to the Michigan Reformatory where Defendant Wickerink was employed as the "regular officer" during the 6 a.m. through 2 p.m. work shift. In March 2010, Plaintiff began regularly attending Friday morning MSTA worship services.

        On September 1, 2010, Plaintiff began working as porter in his housing unit. Plaintiff's work schedule, however, conflicted with his Friday morning worship services. From September 2010 through February 2011, Defendant Wickerink provided Plaintiff with a pass each Friday permitting

Plaintiff to leave his work assignment and attend worship services.  However, on nineteen (19) occasions between February 4, 2011, and August 26, 2011, Defendant Wickerink refused to provide Plaintiff with a pass allowing him to leave his work assignment and attend Friday morning worship services.

Plaintiff initiated this action against Wickerink and Warden Carmen Palmer.  Plaintiff alleges that Defendants' conduct violated his First Amendment right to freely exercise his religion, as well as his Fourteenth Amendment right to the equal protection of the laws.  Plaintiff's claims against Warden Palmer have since been dismissed.  Defendant Wickerink now moves for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery."  *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by

admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*,

270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.        **First Amendment Claim**

Plaintiff asserts that his First Amendment right to freely practice his religion was violated on each of the several occasions on which Defendant Wickerink refused to issue a pass allowing him to leave his work assignment to attend worship services.

It is well accepted that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution").  Specifically, prisoners retain the First Amendment

protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). Nevertheless, operating a prison is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85. Recognizing this, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

Accordingly, when reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *Shabazz*, 482 U.S. at 349). The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3.  the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4.  whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policies at issue are reasonably related to a legitimate penological interest. *Id.*

To establish that his right to freely practice his religion has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) the Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also*, *Bakr v. Johnson*, 1997 WL 428903 at *2 (6th Cir., July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials"); *Barhite v. Caruso*, 2009 WL 440682 at *2 (W.D. Mich., Feb. 23, 2009). Defendant does not argue that Plaintiff's religious beliefs were not sincere, but instead argues that his actions were reasonably related to a legitimate penological objective.

Pursuant to Michigan Department of Corrections (MDOC) policy, "[p]risoners shall not be released from work or school assignments to attend group religious services or activities, consistent

with restrictions on attending other personal interest activities." Mich. Dep't of Corr. Policy Directive 05.03.150 ¶ BB (eff. Sept. 20, 2007). Defendant Wickerink asserts in an affidavit that he is required to comply with this particular policy "unless the inmate is on call out or there is a conflicting report." (Dkt. #8, Exhibit B). Wickerink asserts that on each occasion that he denied Plaintiff's request for a pass to leave his work assignment and attend worship services "it was pursuant to policy because [Plaintiff] was not on a callout and there was no conflict report to verify that [Plaintiff] was able to attend his religious exercises." Defendant Wickerink further asserts that Plaintiff "chose to sign up for a work assignment detail which required him to work on Fridays." *Id.* Plaintiff has failed to submit any evidence in response to Defendant Wickerink's properly supported motion for summary judgment.

Examination of the aforementioned factors persuades the Court that Defendant Wickerink is entitled to relief. It cannot be disputed that prison officials have a legitimate interest in ensuring the orderly and regulated movement of prisoners within a correctional facility. Moreover, the Court finds that there exists a valid, rational connection between this legitimate interest and the aforementioned policy pursuant to which Defendant Wickerink acted. Consideration of the remaining factors likewise weighs in Defendant's favor. As Defendant observes, Plaintiff could have chosen a prison job that did not interfere with his worship schedule. Moreover, the negative impact upon prison order and security that would result from allowing prisoners to travel throughout a prison without reasonable restrictions greatly outweighs whatever inconvenience that prisoners may experience in complying therewith. The undersigned, therefore, recommends that Defendant Wickerink's motion for summary judgment be granted as to this claim.

II.             **Equal Protection Claim**

In his complaint, Plaintiff asserts that Defendant Wickerink violated his right to the equal protection of the laws.  Plaintiff has been permitted to proceed as a pauper in this matter.  Pursuant to federal law, "[n]otwithstanding any filing fee, or portion thereof, that may have been paid" by a litigant pauper, "the court *shall* dismiss the case *at any time* if the court determines that. . .the action. . .fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

As the Supreme Court subsequently clarified, to satisfy this Rule a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*  As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals

> observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 1949-50 (internal citations omitted).

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Accordingly, the state "cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005) (citations omitted).

While Plaintiff asserts in his complaint the conclusion that Defendant Wickerink violated his right to the equal protection of the law, his complaint contains no *factual* allegations that, if proven, would entitle him to relief on this claim. Accordingly, the undersigned recommends that Plaintiff's equal protection claim against Defendant Wickerink be dismissed for failure to state a claim on which relief may be granted.

In the alternative, the undersigned recommends that Defendant Wickerink is entitled to summary judgment as to this claim. In his affidavit, Wickerink asserts that he denied passes to all inmates seeking release from school or work assignments to attend religious services "unless the inmate is on call out or there is a conflicting report." (Dkt. #8, Exhibit B). The unrefuted evidence submitted by Defendant Wickerink establishes that he treated all inmates similarly situated to Plaintiff identically. Thus, Wickerink is entitled to relief on this claim.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendant Wickerink's Motion for Summary Judgment</u>, (dkt. #7), be **granted** and this matter **terminated**.  The undersigned further recommends that appeal of this matter would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  June 13, 2012                      /s/ Ellen S. Carmody
                                          ELLEN S. CARMODY
                                          United States Magistrate Judge